EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**DAVID RYAN, ET ALS,**

      **Plaintiffs**                      Case No. 1:09-cv-10653

    **v.**

**SEARS, ROEBUCK and CO. and**
**ACME ELECTRIC CORPORATION**

      **Defendants.**

### PLAINTIFFS' RE - NOTICE OF TAKING DEPOSITION OF DEFENDANT, SEARS ROEBUCK AND CO., PURSUANT TO FRCP RULE 30(b)(6)

**To:**    Brooks L. Glahn, Esq.
         Adler, Cohen, Harvey, Wakeman and Guekguezian
         75 Federal Street
         Boston, MA 02110

**PLEASE TAKE NOTICE** that at 11 a.m. on **WEDNESDAY, JANUARY 27, 2010,** at Adler, Cohen, Harvey, Wakeman, and Guekguezian, LLP, Boston, Massachusetts, the plaintiffs by their attorney will take the deposition upon oral examination of the person or persons designated by the defendant, Sears Roebuck and Company (hereinafter "Sears") pursuant to Rule 30(b)(6) of the **Federal Rules of Civil Procedure** as most knowledgeable to testify on the matters set forth in the attached Schedule A. The deponent is further required to bring to the deposition all documents specified in the attached Schedule B, which were originally requested more than thirty days in advance of the deposition date in a Request for Production of Documents. Said deposition will be taken before a Notary Public or another person authorized to administer oaths in the Commonwealth of Massachusetts.

Plaintiffs,

By their Attorney,

_____
John F. Finnerty, Jr.
BBO #166540
Finnerty Law Offices
56 Bayberry Way
Osterville, MA  02655
Telephone: 508-428-1234
Fax: 508-428-0660

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the within document was served upon Brooks L. Glahn, Esq. by mail on  \_\_\_\_, 2010.

_____
John F. Finnerty, Jr.

## SCHEDULE A

1. The design, specifications, manufacture, distribution, marketing, supplying and sale of the "SEARS 10/2 amp 12 Volt Automatic Battery Charger" bearing model/serial numbers 608.71857 and A-128299 depicted in the photographs attached hereto as Exhibits I and II (hereinafter "the subject battery charger").

2. The significance of the following numbers and words appearing on white stickers on the bottom of the subject battery charger:

   a. "E1A-413
       8196"

   b. "FINAL TESTED
       413"

3. Any agreements or contracts between Sears and a third party pursuant to which the subject battery charger was manufactured.

4. Any and all testing of the subject battery charger model by the defendant or on its behalf at any time.

5. Any and all changes in the design or specifications of the subject battery charger model during the period of time it was sold by Sears including the date of each such change, the reasons for adopting each such change, and whether the subject battery charger model was previously or subsequently sold under any different model number and/or serial number.

6. The inclusive dates of Sears' distribution and sale of the subject battery charger model including the number distributed and sold during each year.

7. a) Sears' decision to distribute and sell the subject battery charger model;

   b) Sears' decision to cease distribution and sale of the subject battery charger model.

8. The existence of technology not incorporated into said battery charger model that would have made it less likely to emit sparks during use.

9. The existence of other battery chargers available for sale on the retail market at the time Sears was selling the subject battery charger model that were less likely to emit sparks during use.

10. Any and all safety features incorporated into the design of the subject battery charger model.

11. Any and all safety features not incorporated into the design of the subject battery charger model.

12. Sears distribution and/or sale of a battery charger model incorporating a spark protection system.

13. Any and all patents under which Sears has distributed and/or sold a battery charger model incorporating a spark protection system.

14. The reasons Sears decided to cease distributing and/or selling the subject battery charger model.

15. a) The battery charger model that replaced the subject battery charger model in Sears' product line;

    b) The date of said replacement;

    c) The reasons for said replacement.

16. Any and all recalls of battery chargers distributed and/or sold by Sears at any time specifically including all reasons for each such recall, the model numbers involved in each such recall, and the number of batteries involved in each such recall.

17. Any and all consumer complaints and/or claims received by Sears prior to November 13, 2006 in connection with fires and/or explosions allegedly caused by battery chargers distributed and/or sold by Sears specifically including but not limited to complaints relative to the subject battery charger model.

18. Any and all safety improvements to the design of the subject battery charger model subsequent to its initial sale and/or distribution by Sears specifically including but not limited to improvements to prevent and/or to protect from sparking.

19. Each component part of the subject battery charger model and the cost to Sears of each component part of the subject battery charger model specifically including but not limited to the metal clips used to attach the charger to the battery posts.

20. The design and specifications of said battery charger clips.

21. The manufacturer of said battery charger clips.

22. The supplier of said battery charger clips.

23. What other battery charger clip designs were considered.

24. The cost differences between the battery clip design used and other clip designs.

25. The environments in which the subject battery charger was designed to be used including garages.

26. The types of failure modes noticed regarding the clips on the subject battery charger.

27. The design useful life of the subject battery charger.

28. The design useful life of the subject battery charger clips.

29. The considerations given to the material of the subject battery charger clips.

30. Warnings provided with the subject battery charger about the environment in which it is used.

31. The recommended procedure for using the subject battery charger.

32. The batteries with which the subject battery charger is to be appropriately used.

33. The subject battery charger's rate of charging over time.

34. Claims against the defendant arising out of battery explosions and/or fires.

35. The manner in which the subject battery charger mitigates the production of hydrogen from lead-acid batteries at the end of the charging cycle.

36. The materials out of which said battery charger clips were manufactured.

37. a) The owners' manual, instruction manual, and any other instruction or warnings documentation or labeling accompanying the subject battery charger model at the time of distribution and/or sale;

    b) Any and all revisions to said documentation at any time.

38. The advertising of the subject battery charger model specifically including but not limited to print advertising and internet advertising.

25. Documents referencing features of the subject battery charger model specifically including but not limited to reports, correspondence, memoranda,

      notices, intra-company communications, e-mails, warnings, safety concerns including concerns about sparking, and safety recommendations including recommendations to prevent or protect against sparking.

39. Hazards or risks in the use of the subject battery charger model specifically including reports, correspondence, memoranda, notices, intra- company communications, e-mails, warnings, alerts, and recalls.

40. Sears' quality assurance procedures, protocols and standards relating to the subject battery charger model.

41. Contractual agreements between Sears and any other company relating to the design, manufacture, or sale of the subject battery charger model.

42. Complaints or allegations at any time that the subject battery charger model caught fire or caused a fire.

43. Testing or hazard analysis conducted to determine the subject battery charger model's propensity to spark or cause a fire.

44. Documents referencing features of the subject battery charger model specifically including reports, correspondence, memoranda, notices, intra-company communications, emails, warnings, and safety recommendations.

45. Hazards and/or risks in the use of the subject battery charger model, specifically including reports, correspondence, memoranda, notices, intra-company communications, emails, warnings, alerts, and recalls.

46. Advertising copy used in print advertising and/or internet advertising prior to November 12, 2006 in connection with the defendant's marketing and/or promotion of battery chargers incorporating a spark protection system.

47. Advertising copy used in print advertising and/or internet advertising on and after November 12, 2006 in connection with the defendant's marketing and/or promotion of battery chargers incorporating a spark protection system.

48. Any and all warranties in connection with the subject battery charger.

49. Sears' quality assurance procedures, protocols, and standards relating to the subject battery charger model.

50. The expected uses of the subject battery charger model.

51. The expected useful life of the subject battery charger model.

52. Complaints or allegations by anyone at any time that the subject battery charger model caused a fire.

53. Complaints or allegations by anyone at any time that any other battery charger model sold by the defendant caused a fire.

54. Any testing or hazard analysis conducted to determine the propensity of the subject battery charger model to emit sparks.

55. Any testing or hazard analysis conducted to determine the propensity of any other battery charger sold by Sears to emit sparks

## SCHEDULE B

1. All documents in connection with the battery charger which the plaintiff claims caused his injuries, to wit, the battery charger bearing model/serial numbers 608.718571 and A-128299 appearing in the photographs attached hereto as Exhibits A and B (hereinafter "the subject battery charger") specifically including but not limited to the following:

    a. All documents in connections with its design and specifications including design drawings;
    b. All documents in connection with its manufacture;
    c. All documents in connection with its marketing including print and internet advertisements;
    d. All documents in connection with its distribution and supplying;
    e. All documents in connection with its sale specifically including invoices and bills of sale;
    f. All documents in connection with instructions as to its use including instruction manuals and owner's manuals;
    g. All documents in connection with warnings as to its use;
    h. All documents in connection with its warranties;
    i. All documents in connection with any patents under which it was manufactured including patent applications, grants of patents, and correspondence with government agencies;
    j. All documents in connection with its testing.

2. All agreements and/or contracts between the defendant and any third parties with respect to the manufacture of the subject battery charger model.

3. All photographs of the subject battery charger model specifically including but not limited to photographs used in print and/or internet advertising.

4. All advertising copy in connection with the subject battery charger model used in print advertising and/or internet advertising.

5. All documents referencing features of the subject battery charger model specifically including reports, correspondence, memoranda, notices, intra-company communications, emails, warnings, and safety recommendations.

6. All documents in connection with hazards and/or risks in the use of the subject battery charger model specifically including reports, correspondence, memoranda, notices, intra-company communications, emails, warnings, alerts, and recalls.

7. All documents in connection with changes in the design of the subject battery charger model after its initial sale to the general public so as to incorporate any safety features not present in the subject battery charger unit involved in the plaintiff's accident specifically including correspondence, memoranda, reports, warnings, notices, intra-company communications, emails, patent applications, grants of patents, and correspondence with government agencies.

8. All documents in connection with the defendant's first distribution and sale of any battery charger model incorporating a spark protection system specifically including correspondence, memoranda, reports, emails, intra-company communications with respect to the design, manufacture, distribution, sale, and/or safety of such battery chargers, patent applications, and grants of patents, and correspondence with government agencies.

9. All documents in connection with the defendant's distribution and sale of subsequent battery charger models incorporating a spark protection system specifically including correspondence, memoranda, reports, emails, and intra-company communications, patent applications, grants of patents, and correspondence with government agencies.

10. All advertising copy used in print advertising and/or internet advertising prior to November 13, 2006 in connection with the defendant's marketing and/or promotion of battery chargers incorporating a spark protection system.

11. All documents in connection with the defendant's decision to cease distributing and selling the subject battery charger model specifically including reports, correspondence, memoranda, notices, emails, and intra-company communications.

12. All documents in connection with recalls of the subject battery charger model including reports, correspondence, memoranda, intra-company communications, emails, alerts, and notices of recall.

13. All documents in connection with the recall of any other of the defendant's battery charger models specifically including but not limited to Sears DIE HARD battery charger bearing model number 200.71310 manufactured between January 1996 and February 1997 including reports, correspondence, memoranda, intra-company communications, emails, alerts, and notices of recall.

14. All documents including correspondence, memoranda, intra-company communications, emails, and reports in connection with complaints to and/or claims made against the defendant arising out of personal injuries or property damage allegedly caused by the subject battery charger model as a result of explosions or fires specifically including but not limited to complaint letters, the defendant's responses, copies of court pleadings, written discovery, and deposition transcripts.

15. All documents including correspondence, memoranda, intra-company communications, emails, and reports in connection with complaints to and/or claims made against the defendant arising out of personal injuries or property damage allegedly caused by any of the defendant's other battery charger models as a result of explosions or fires specifically including but not limited to complaint letters, the defendant's responses, copies of court pleadings, written discovery, and deposition transcripts.

16. All design drawings for the subject battery charger clips.

17. All specifications for the subject battery charger clips.

18. All documents identifying the manufacturer of the subject battery charger clips.

19. All documents identifying the supplier of the subject battery charger clips.

20. All documents in connection with the defendant's consideration of other clip designs.

21. All documents in connection with the cost differences between the subject clip design and other clip designs.

22. All documents in connection with the environments in which the subject battery charger was designed to be used.

23. All documents in connection with the types of failure modes the defendant has noticed regarding the clips on the subject battery charger.

24. All documents in connection with the design useful life of the subject battery charger.

25. All documents in connection with the design useful life of the subject battery charger clips.

26. All documents in connection to what consideration was given to the material of the subject battery charger clips.

27. All documents in connection with warnings provided to the purchaser of the subject battery charger about the environment in which it is used.

28. All documents in connection with the recommended procedure for using the subject battery charger.

29. All documents in connection with the types of batteries with which the subject battery charger is appropriate for use.

30. All documents in connection with the subject battery charger's rate of charging over time.

31. All documents in connection with the manner in which the subject battery charger mitigates the production of hydrogen from lead-acid batteries at the end of the charging cycle.

32. All documents in connection with the defendant's involvement as a defendant in a lawsuit for a battery explosion and/or fire.

33. The declarations pages of all insurance policies or agreements, including excess limits policies, providing coverage to the defendant for the plaintiffs' claims in this case.